```
             IN THE UNITED STATES DISTRICT COURT

             IN AND FOR THE DISTRICT OF DELAWARE

                          - - -

   EDWARDS LIFESCIENCES LLC AND     )    Civil Action
   EDWARDS LIFESCIENCES PVT, INC.,  )
                                    )
              Plaintiffs,           )
                                    )
        v.                          )
                                    )
   MEDTRONIC COREVALVE LLC,         )
   MEDTRONIC CV LUXEMBOURG          )
   S.A.R.L., MEDTRONIC VASCULAR     )
   GALWAY LTD., MEDTRONIC, INC.,    )
   AND MEDTRONIC VASCULAR, INC.,    )
                                    )    12-23-GMS
              Defendants.
                          - - -
                   Wilmington, Delaware
                  Thursday, May 31, 2012
                       10:50 a.m.
                     Teleconference
                          - - -

   BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge

   APPEARANCES:

         MARYELLEN NOREIKA, ESQ.
         Morris, Nichols, Arsht & Tunnell LLP
                     -and-
         JOHN E. NATHAN, ESQ., and
         CATHERINE NYARADY, ESQ.
         Paul, Weiss, Rifkind, Wharton & Garrison LLP
         (New York, N.Y.)

                         Counsel for Plaintiffs

         JOHN W. SHAW, ESQ.
         Shaw Keller LLP
                     -and-
         STACIE E. OBERTS, ESQ.
         Robins, Kaplan, Miller & Ciresi LLP
         (Minneapolis, MN)

                         Counsel for Defendants
```

1          **THE COURT:  Good morning, counsel.  Who is on**
2  **the line for Edwards today?**
3          **MS. NOREIKA:  Good morning, Your Honor.**
4  **Maryellen Noreika from Morris Nichols for plaintiff.  With**
5  **me on the line are John Nathan and Catherine Nyarady from**
6  **Paul Weiss.**
7          **THE COURT:  Good morning.**
8          **For Medtronic.**
9          **MR. SHAW:  Good morning, Your Honor.  John Shaw**
10 **from Shaw Keller.  With me on the line is Stacey Oberts from**
11 **Roberts Kaplan.**
12         **THE COURT:  Good morning.**
13         **Counsel, my first observation, after reading the**
14 **two -- let me go back to the beginning, that is, your**
15 **letter.**
16         **There are some differences that are apparent in**
17 **the proposals concerning a prosecution bar, that is**
18 **Paragraph 6 of the current confidentiality agreement.**
19 **Right?**
20         **I will take that as a yes.**
21         **The second two bullets, the first and only one**
22 **under plaintiffs' and the only one under defendants', seem**
23 **to be just differently worded statements of the same issue.**
24 **Is that correct?**
25         **MS. NYARADY:  Your Honor, that is correct.**

```
 1              THE COURT:  All right.  So let's talk about the
 2   first bullet.  I have to say initially that it strikes me
 3   that this kind of matter should be the subject of a
 4   negotiation between the parties, the resulting language,
 5   much like what is usually the case when you all sit down and
 6   negotiate confidentiality agreements.
 7              I don't know what the various drivers are for
 8   the language and the various proposals in one versus the
 9   other, nor do I really care.
10              But I do care about the Court's time being used
11   in a manner that I think is inappropriate and time-wasteful.
12   I also care about me being asked to make rulings that will
13   essentially just be arbitrary.
14              I don't know that there is any case law to
15   direct my efforts in this regard.  I would seriously doubt
16   it.  This seems to me to be purely a matter of discretion.
17   And I am not certain exactly how I should be guided in the
18   exercise of that discretion.
19              So, that said, I am disappointed to be on the
20   phone with this particular matter.  It seems to me that -- I
21   count three or four areas of difference, the first being the
22   Edwards proposal seems, in terms of its verbiage, seems to
23   be more specific in places, for instance, where in the
24   initial paragraph you say -- and I am paraphrasing -- things
25   like, ...providing (verbally or in intangible form, in whole
```

1    or in part) such confidential or highly confidential

2    information received under this order to any person involved

3    in drafting, prosecuting or supervising the drafting or

4    prosecution of any patent applications; where Medtronic

5    says, working on patent prosecution.  I would imagine

6    Edwards would suggest, well, that's just too broad and not

7    specific enough.

8          Then it goes on, you are essentially talking

9    about before the same entity, the United States Patent and

10    Trademark Office:  and/or similar proceedings in other

11    countries.

12          So you agree with that.

13          Then you go on, the next point of difference

14    that I see is where you say, Edwards says, ...For purposes

15    of clarity, prosecution history does not include

16    reexamination.

17          Medtronic says, ...For purposes of clarity,

18    prosecution includes reexamination.

19          And then there is some additional language at

20    the bottom of Edwards' proposal suggesting some Anderson I

21    protective order, I have no idea what that is, that upon the

22    entry of this protective order that paragraph, or this

23    paragraph should supersede Sentences 4 and 5 of the Anderson

24    I protective order.

25          Counsel, why weren't you able to work this out?

1    **MS. NYARADY:  Your Honor, for Edwards.  I**
2    **apologize on behalf of everyone for taking the Court's time.**
3    **THE COURT:  I don't want an apology.  I am tired**
4    **of lawyers apologizing to me for wasting my time.  I think I**
5    **said, I don't know if Delaware were at a meeting concerning**
6    **Delaware local counsel where I made the observation that**
7    **it's like a death by a thousand cuts, the manner in which**
8    **you encroach on each of the judges over here, on our time**
9    **with stuff like this.  It just adds up to the point of just**
10   **utter ridiculousness.**
11   **Why can't you work this out?**
12   **MS. NYARADY:  Your Honor, there is a serious**
13   **underlying issue, which is why this is brought to the Court.**
14   **This is an issue that the parties have been fighting over**
15   **for several years in different venues.  The first being**
16   **actually in front of Your Honor a couple years ago, under**
17   **what was called, as you referred to, the Delaware I case.**
18   **To summarize what the dispute is, the big issue**
19   **is whether or not the patent prosecution bar and protective**
20   **order will apply to post-grant proceedings.  And**
21   **specifically, most importantly, is reexamination.  And the**
22   **reason for that is Medtronic, since the entry of the first**
23   **protective order in Delaware I, Medtronic has filed seven**
24   **separate reexaminations against Edwards' patents, all in the**
25   **same family of patents.  And they have used the protective**

1  order language and the prosecution bar language from the
2  first Delaware case, which has the words "working on
3  prosecution," to preclude Edwards' trial counsel and expert
4  from the Delaware I case from participating in any of those
5  reexaminations.
6  　　　　　So the nature of the dispute really is centered
7  on whether the prosecution bar should prohibit people
8  involved in the current litigation who have access to
9  confidential information from working on post-grant
10 proceedings or not.
11 　　　　　Importantly, in Edwards' proposal, we have
12 stated that people under the protective order and subject to
13 the prosecution bar will agree not to amend or draft claims,
14 which had been historically what Medtronic has articulated
15 as their fear of inadvertent disclosure of their
16 confidential information.
17 　　　　　We think that this protective order sufficiently
18 protects the parties and yet allows for fair use of the
19 resources of the parties.  In addition, this protective
20 order, the prosecution bar that Edwards proposes, Paragraph
21 6 here, is identical except for that last sentence that
22 Anderson I -- the provision of the post-grant proceedings is
23 identical to a protective order that was entered in a
24 pending California case between the same parties on this
25 related technology.

```
 1                So we think that there should be uniformity
 2    between protective orders that are governing the same
 3    parties essentially with the same documents that are being
 4    shared between the cases and on the same technology.
 5                THE COURT:  Okay.  Fair enough.  Let's hear a
 6    response.
 7                MS. OBERTS:  Thank you, Your Honor.  This is
 8    Stacey Oberts for the Medtronic entities.
 9                Ms. Nyarady has accurately framed the issue,
10    which is whether or not trial counsel and experts who
11    receive highly confidential information should be allowed to
12    participate in reexaminations and reissues.  This is an
13    issue that was brought before Your Honor in the previous
14    litigation, when Edwards' trial counsel wanted to
15    participate in reexamination proceedings.  This Court found
16    that the risk of inadvertent disclosure of confidential
17    information was too great.
18                Now, while Ms. Nyarady talks about the fact that
19    there are seven pending reexams, Edwards has been working on
20    those reexams without the assistance of the Paul Weiss
21    attorneys or the expert to this day.  And Paul Weiss, Ms.
22    Nyarady recognizes that they do not prosecute patents, so
23    its unclear to Medtronic why they should be able to
24    participate when they are going to be receiving and have
25    already received information that's confidential about
```

1  Medtronic's future products.
2       This is a situation where these are the only two
3  competitors in this area.  So when these parties go to the
4  PTO to seek protection, they are seeking to exclude the
5  other party.  So there is a significant competitive risk to
6  allow them to participate in these post-grant proceedings
7  where they can.  Whether they are drafting or amending the
8  claims specifically, they can still provide information that
9  will impact the scope of the claims.
10      In addition, this protective order would also
11 allow them to participate in reissue proceedings, which the
12 parties are then able to broaden claims.  The patent that is
13 at issue in this case would be subject to reissue.  It's
14 within that two-year period.  So Edwards could potentially
15 put that patent into reissue.  They could seek broader
16 claims armed with the information about Medtronic's future
17 products.
18      That is why Medtronic believes none of the trial
19 counsel that receives either side's confidential information
20 should be able to participate in these post-grant
21 proceedings.
22      THE COURT:  Let me ask you one question,
23 counsel.  Your opponent suggests that there would be some
24 value in having consistency from one coast to the other.
25 What is your view about that?

```
 1              MS. OBERTS:  We fought this issue, Your Honor,
 2   in California.  And Ms. Nyarady had to recognize and concede
 3   to the Court that right now her firm, as well as the expert
 4   that they disclosed in California, Dr. Buller, are already
 5   subject to the protective order from the previous litigation
 6   before Your Honor, and therefore are already precluded from
 7   participating in reexamination proceedings.
 8              So there is some consistency here with respect
 9   to the fact that the Paul Weiss attorneys and their expert,
10   Dr. Buller, are already prevented based on the protective
11   order in the Delaware I litigation.
12              THE COURT:  Okay.
13              Ms. Nyarady.
14              MS. NYARADY:  Your Honor, that is exactly why we
15   have the last part of our proposed prosecution bar
16   paragraph, the last two sentences deal with that, because we
17   think there should be consistency amongst all of the cases.
18              Importantly, all of the documents and testimony
19   and exhibits and demonstratives, everything that was in
20   Delaware I has been deemed by the parties to be produced in
21   the California case.  So everyone in the California case has
22   access to -- everyone in the protective order in the
23   California case has access to everything that was in
24   Delaware I.  And yet in California, there is a prosecution
25   bar in place that is less restrictive than Delaware I.  So
```

1  you really have two groups of people.  You have people who
2  were not under the Delaware protective order but are working
3  on these cases for the parties in California who are allowed
4  to have all of this information and new information that is
5  being produced in California, they are allowed to
6  participate in post-grant proceedings.
7  　　　　　It was very important to the Court there that
8  Edwards agreed not to amend claims.  And we are past that.
9  We agreed we are not going to amend claims.  We agreed that
10 we are not going to participate in any way in amending or
11 drafting claims.  The Magistrate Judge ruled on that
12 protective order.  It was entered.  Medtronic did not appeal
13 that to the District Court Judge.  That is in place now.
14 　　　　　While you still have people such as Paul Weiss
15 and Dr. Buller, who are under the Delaware protective order,
16 who cannot participate in everything, now Medtronic has
17 changed counsel, so the fact that they also have some
18 counsel under the Delaware I protective order that is
19 subject to the stricter bar really doesn't hinder them or
20 cost them anything additionally, but they have also changed
21 experts.
22 　　　　　Now we are in a position where Medtronic just
23 last week proposed an expert in the California litigation,
24 Dr. Diamond, who has already been putting declarations in
25 the reexaminations, and now they want to use him in

1     litigation.  So they are fine using their people in multiple

2     things.  And presumably he is going to participate in

3     reexaminations and possibly new ones because Medtronic files

4     them routinely.

5               So they have Dr. Diamond that they are proposing

6     to be in both venues under the less restrictive California

7     protective order, and yet they want to say, well, you know,

8     too bad, Dr. Buller was in Delaware so you can't use your

9     guy in both.

10              THE COURT:  Counsel for Medtronic, let me get

11    your reaction to those latter comments.

12              MS. OBERTS:  Your Honor, Edwards has given us no

13    indication as to why this Court should change its previous

14    ruling, which barred the Paul Weiss attorneys and their

15    expert from participating in post-grant proceedings.

16              With respect to what happened in California,

17    while Ms. Nyarady wants to argue that Medtronic is trying to

18    take some sort of advantage, it was Medtronic that opposed

19    the prosecution bar that was entered in California.  While

20    we did not appeal that Magistrate's decision to the Article

21    I Judge, it wasn't necessary because at this point, with the

22    previous protective order that Your Honor has already ruled

23    on in the previous litigation, the Paul Weiss attorneys and

24    their expert can't participate.  So while there is that

25    provision in California, it doesn't affect Medtronic at this

1   point because the people that had the highly confidential
2   information are already subject to the previous bar.
3               If the concern was that Medtronic would not be
4   subject to it, its new lawyers or its new expert, we can go
5   back and revisit the California bar and put in place what
6   Medtronic had originally proposed.
7               It's Medtronic's view that none of the trial
8   counsel or experts who receive confidential information
9   should be allowed to participate in these proceedings with
10  the highly confidential information of their one competitor
11  in this space.
12              THE COURT:  I tend to agree with Medtronic on
13  this.  I see no reason to reconsider, which I am essentially
14  being asked to, my previous order, which I seem to recall
15  was well considered at the time.  I have heard nothing, Ms.
16  Nyarady.
17              I am going to adopt the Medtronic proposal,
18  unless there is something else you want to say about other
19  aspects of your proposal, Ms. Nyarady.
20              What I have just addressed is, I intended to
21  address the proposal in its entirety.  So I am adopting the
22  language for purposes of clarity "prosecution includes
23  reexamination."
24              Go ahead.
25              MS. NYARADY:  That was actually going to be my

1    question for clarification.
2            THE COURT:  That is the clarification.
3            MS. NYARADY:  Even if the --
4            THE COURT:  Don't reargue it.  That's the
5    language I am adopting.  What I am interested in wanting to
6    know is whether there are other provisions that you have
7    proposed in your proposed prosecution bar, Paragraph 6, that
8    we need to discuss today?  Or can counsel now, with the
9    guidance you have received, move forward and finish working
10   out this language?  Or should I just order -- as it seems
11   that I did, but I am willing to at least reconsider that
12   remark -- can you work out the additional language on your
13   own, or should I just adopt Medtronic's proposed prosecution
14   bar in its entirety?  I am open to either suggestion.
15           MS. NYARADY:  Your Honor, I would think we would
16   be able to work this out.  To be clear, we object to it.  We
17   understand your order.
18           THE COURT:  Ms. Nyarady, what was the purpose of
19   that remark?  Obviously, I understand that you object.
20           MS. NYARADY:  I didn't know, Your Honor, if it
21   was clear.
22           THE COURT:  It's not Friday yet, is it?
23           Counsel for Medtronic, do you think you and your
24   opponents can work this out, given the guidance I have
25   stated?

1         **MS. OBERTS: Yes, Your Honor. I believe we can.**

2         **THE COURT: Counsel, have a good day. Goodbye.**

3         **(Conference concluded at 11:07 a.m.)**

5         - - -

6   **Reporter: Kevin Maurer**