IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARDS LIFESCIENCES LLC AND EDWARDS LIFESCIENCES PVT, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 12-023-GMS |
| MEDTRONIC COREVALVE LLC, MEDTRONIC CV LUXEMBOURG S.A.R.L., MEDTRONIC VASCULAR GALWAY LTD., MEDTRONIC, INC., AND MEDTRONIC VASCULAR, INC., | ) ) ) ) ) ) ) | ▮▮▮▮▮▮▮▮▮▮<br>REDACTED - PUBLIC VERSION |
| Defendants. | ) | |

**DEFENDANTS' PROFFER OF EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 103 REGARDING CONTINUED ACCESS SALES**

OF COUNSEL:
Martin R. Lueck
Jan M. Conlin
Stacie E. Oberts
Sharon E. Roberg-Perez
Andrew D. Hedden
ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500

Edward R. Reines
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Dated: January 10, 2014

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Medtronic CoreValve LLC, Medtronic CV Luxembourg S.a.r.l., Medtronic Vascular Galway Ltd., Medtronic, Inc., and Medtronic Vascular, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARDS LIFESCIENCES LLC AND<br>EDWARDS LIFESCIENCES PVT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC COREVALVE LLC,<br>MEDTRONIC CV LUXEMBOURG<br>S.A.R.L., MEDTRONIC VASCULAR<br>GALWAY LTD., MEDTRONIC, INC.,<br>AND MEDTRONIC VASCULAR, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 12-023-GMS<br>**CONFIDENTIAL—**<br>**FILED UNDER SEAL** |

## DEFENDANTS' PROFFER OF EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 103 REGARDING CONTINUED ACCESS SALES

Defendants Medtronic CoreValve LLC, Medtronic CV Luxembourg S.a.r.l., Medtronic Vascular Galway Ltd., Medtronic, Inc., and Medtronic Vascular, Inc. (collectively "Medtronic") submit this offer of proof regarding continued access sales. This continued access proof was not tendered at trial following the Court's ruling sustaining plaintiffs Edwards Lifesciences LLC and Edwards Lifesciences PVT, Inc.'s (collectively "Edwards") objection to the inclusion in this case of Medtronic's position that there is no basis for recovery for such sales pursuant to 35 U.S.C. § 271(e)(1). [1/7/14 Trial Tr. 423:10-425:12].[1]

---

[1] Medtronic maintains that Edwards' objection did not accurately describe the state of discovery at sidebar such that the ruling is insufficiently supported by the record and, thus, that the exclusion of Medtronic's position was legally erroneous. (Compare ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Edwards asserts that it is entitled to damages related to Medtronic's continued access sales of its accused device. If permitted, Medtronic would have offered evidence and testimony to establish that Medtronic's continued access sales fall under the statutory safe harbor of § 271(e)(1), an exemption to patent infringement. *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 203 (2005). Because data collected through Medtronic's continued access studies is submitted to FDA to support regulatory approval, it falls under the Federal Circuit's broad reading of the statute. *See, e.g., Momenta Pharmaceuticals, Inc. v. Amphastar Pharmaceuticals, Inc.*, 686 F.3d 1348, 1356-57 (Fed. Cir. 2012).

In support of its position, Medtronic would have offered the following evidence:

**Cross-Examination Testimony of Dr. Gregory Leonard**. Dr. Leonard is Edwards' damages expert.

- If it had been permitted to offer evidence and testimony to rebut Edwards' position that Edwards is entitled to damages based upon Medtronic's continued access sales, Medtronic would have offered cross-examination testimony of Edwards' expert Dr. Leonard that his opinion ███████████████████████████████████████████████████████████████████████████

**Testimony of Declan Dineen**. Mr. Dineen is Director of Regulatory Affairs for the structural heart division of Medtronic, Inc. Mr. Dineen was offered as a 30(b)(6) witness on the topic of continued access studies. [Ex. A, Edwards' 30(b)(6) Deposition Notice].

- At trial, Mr. Dineen would have testified, and at his deposition did testify, that continued access is an FDA policy to allow patient access to not yet approved therapies after a clinical trial has completed enrollment once preliminary safety and effectiveness have been established. The purpose is to allow patients access to lifesaving therapy during the review period. [Ex. B, 12/12/12 Dep. Tr., 144:22-

access sales) [Ex. B]).

145:4]. In addition, at trial, Mr. Dineen would have testified that continued access studies are generally performed for new and novel, lifesaving devices, such as the CoreValve, where there is a dearth of available alternatives on the market, and, thus, a particular public health need for access to such devices. ▮

- At trial, Mr. Dineen would have testified, and at his deposition did testify, that while continued access studies are not required to obtain approval, the data generated through continued access studies is in fact used to support approval of the premarket application. [Ex. B, 12/12/12 Dep. Tr., 145:5-145:10]. ▮

▮

- ▮

- ▮

- ▮

- ▮

3

███nts.

### Cross-Examination Testimony of Larry Wood

- If it had been permitted to offer evidence and testimony to rebut Edwards' position that Edwards is entitled to damages based upon Medtronic's continued access sales, Medtronic would have continued the line of cross-examination testimony of Edwards' witness, Larry Wood, that to which an objection was raised by Edwards and which the Court sustained, including but not limited to facts demonstrating that Edwards has submitted its continued access data to support FDA approval of its SAPIEN and SAPIEN XT devices.

**Trial Exhibits**. In addition to the testimony cited above, Medtronic would have offered the following exhibits into evidence:

- **DTX373** – Continued Access to Investigational Devices During PMA Preparation and Review, July 15, 1996 (Blue Book Memo) (D96-1) – describing the FDA's policy regarding continued access studies. [Ex. F].

███████████████████

OF COUNSEL:
Martin R. Lueck
Jan M. Conlin
Stacie E. Oberts
Sharon E. Roberg-Perez
Andrew D. Hedden
ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
Minneapolis, MN 55402
(612) 349-8500

Edward R. Reines
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Dated: January 10, 2014

/s/ John W. Shaw
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Medtronic CoreValve LLC, Medtronic CV Luxembourg S.a.r.l., Medtronic Vascular Galway Ltd., Medtronic, Inc., and Medtronic Vascular, Inc.*

4

# EXHIBITS A-E

# REDACTED

# EXHIBIT F

Case 1:12-cv-00023-GMS   Document 173   Filed 01/17/14   Page 8 of 12 PageID #: 7211

3/12/13   Guidance Documents (Medical Devices and Radiation-Emitting Products) > Continued Access to Investigational Devices During PMA Preparation and Rev...



**U.S. Food and Drug Administration**
Protecting and Promoting Your Health

Home Medical Devices Device Advice: Comprehensive Regulatory Assistance Guidance Documents (Medical Devices and Radiation-Emitting Products)

## Medical Devices

### Continued Access to Investigational Devices During PMA Preparation and Review July 15, 1996 (Blue Book Memo) (D96-1) (Text Only)

This guidance was written prior to the February 27, 1997 implementation of FDA's Good Guidance Practices, GGP's. It does not create or confer rights for or on any person and does not operate to bind FDA or the public. An alternative approach may be used if such approach satisfies the requirements of the applicable statute, regulations, or both. This guidance will be updated in the next revision to include the standard elements of GGP's.

### IDE Memorandum - #D96-1
Office of Device Evaluation (HFZ-400)

Continued Access to Investigational Devices During
PMA Preparation and Review

ODE Review Staff

Purpose

The purpose of this memorandum is to adopt an official policy on the
continued access to investigational devices while a marketing application
is being prepared or reviewed.

Policy

On May 10, 1995, the Office of Device Evaluation issued a memorandum to
the ODE review staff explaining the conditions under which an

investigational device may be made available during the preparation or
review of a marketing application.

Under this policy, a sponsor may propose to conduct an "extended"
clinical trial if:  1) there is a public health need for the device and
2) there is preliminary evidence that the device is likely to be
effective and no significant safety concerns have been identified for the
proposed indication.

A copy of the original memorandum dated May 10, 1995 is attached for
reference and to provide further elaboration on this policy.


Effective Date

This memorandum is effective immediately.


                          Susan Alpert, Ph.D., M.D.


Attachment

www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/ucm080260.htm

**DTX-373**
12-cv-00023 (GMS)

1/3

Case 1:12-cv-00023-GMS   Document 173   Filed 01/17/14   Page 9 of 12 PageID #: 7212

3/12/13    Guidance Documents (Medical Devices and Radiation-Emitting Products) > Continued Access to Investigational Devices During PMA Preparation and Rev...

```
                                              IDE Memorandum #D96-1
                                              Attachment - Page 1

Date:      May 10, 1995

From:      Director, Office of Device Evaluation (ODE)

Subject:   Investigational Devices Exemption (IDE) Policy Which
           Permits Continued Access to Investigational Devices While a
           Marketing Application is Being Prepared or Reviewed

To:        ODE Review Staff
```

It has recently been brought to my attention that the Office policy regarding continued availability of investigational devices during the period between completion of the clinical study and approval of the marketing application requires clarification. In the near future, a blue book memorandum will be developed which will provide specific guidance on this topic. In the mean time, however, ODE's reviewing divisions should use the general principles presented below as a guideline for developing appropriate criteria for their own use.

ODE has traditionally permitted sponsors of clinical investigations to continue to enroll subjects at a pre-determined rate while a marketing application is being prepared by the sponsor or reviewed by the Office if there is: (1) a public health need for the device or (2) if there is preliminary evidence that the device is likely to be effective and no significant safety concerns have been identified for the proposed indication. Such a policy is scientifically sound as it allows the sponsors to collect additional safety and effectiveness data in support of the marketing application or to address new questions regarding the investigational device during this intervening period. This approach is also administratively appropriate as the preparation and review times for a marketing application can be lengthy; and thus, it could be contrary to the public health to prevent access to these potentially safe and effective new devices during a lengthy evaluation period.

Once a preliminary review of the data (IDE, 510(k), or PMA) indicates that there is evidence of safety and effectiveness, a sponsor may propose to conduct an "extended" clinical investigation of the device. An extended investigation may be conducted for a number of reasons. For example, a sponsor may propose an extended trial for the same indication for use as studied under the IDE and use the same study protocol to provide confirmatory evidence of safety and effectiveness. A modified clinical protocol may be used to better define safety and effectiveness in a subpopulation, to support new indications for use or new modalities of use for the device, to identify and quantify adverse reactions, to address long-term effects of the device, to support additional labeling claims, or to confirm that minor changes made to the device design or to the conditions under which the device will ultimately be used do not substantially impact safety and effectiveness.

```
                                              IDE Memorandum - #D96-1
                                              Attachment - Page 2
```

A request for an extended investigation must be submitted by the sponsor of the IDE in writing as a supplement to the IDE. When reviewing a request for an extended investigation from the sponsor, the sponsor's justification for the extension, the preliminary safety and effectiveness data (IDE, 510(k) or PMA), the risks posed by the device, the proposed rate of continued enrollment, the proposed objectives for the extended study, the sponsor's progress toward submission of the marketing application, and/or

Case 1:12-cv-00023-GMS   Document 173   Filed 01/17/14   Page 10 of 12 PageID #: 7213

3/12/13    Guidance Documents (Medical Devices and Radiation-Emitting Products) > Continued Access to Investigational Devices During PMA Preparation and Rev…

ODE's progress in the review of the marketing application should be considered. All of these factors may influence ODE's decision to approve, approve with modifications, or disapprove the proposed protocol for this intervening period between completion of the core clinical investigation and approval of the marketing application. The above factors should also be considered by ODE when deciding upon an appropriate rate of enrollment, number of investigators, and number of investigational sites for the study during this stage of product development. Finally, a sponsor who has been negligent in his monitoring responsibilities or who has exhibited other unresolved compliance problems would not be permitted to participate in an extended investigation.

An investigation conducted under the provisions of this policy must still be conducted in accordance with the IDE, IRB, and Informed Consent regulations (21 CFR 812, 56, and 50, respectively). FDA may withdraw approval for the extended investigation for any of the reasons identified in 21 CFR 812.30 (b), if the device is being commercialized, or if there is not satisfactory progression towards submission of the marketing application or towards approval of the marketing application. As in the withdrawal of approval of an IDE, however, ODE must make every attempt to resolve the issue(s) with the sponsor, must notify the sponsor in writing of the issue(s), and must notify the IDE Staff and the Director's office before proceeding with this course of action.

Effective Date

This memorandum is effective immediately.

/s/
_____
Susan Alpert, Ph.D., M.D.

Page Last Updated: 05/03/2009
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies



U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA



For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals

 U.S. Department of **Health & Human Services**

Links on this page:

# EXHIBITS G-I

# REDACTED

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on January 10, 2014, this document was served on the persons listed below in the manner indicated:

**BY E-MAIL**
Jack B. Blumenfeld
Regina S.E. Murphy
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rmurphy@mnat.com

Catherine Nyarady
Brian P. Egan
Christopher Terranova
Jenny C. Wu
Kripa Raman
Alexis R. Cohen
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
cnyarady@paulweiss.com
began@paulweiss.com
cterranova@paulweiss.com
jcwu@paulweiss.com
kraman@paulweiss.com
acohen@paulweiss.com

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
*Attorney for Medtronic CoreValve LLC,*
*Medtronic CV Luxembourg S.a.r.l., Medtronic*
*Vascular Galway Ltd., Medtronic, Inc., and*
*Medtronic Vascular, Inc.*